UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

        v.                                07 Cr. 543 (CLB)

YEHEZKEL ELIA and
DAVID ELYAHO,

           Defendants.

-------------------------------------------------------x

**MEMORANDUM OF LAW IN BEHALF OF DEFENDANT YEHEZKEL ELIA
IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE ILLEGALLY SEIZED**

**I. Introduction:**

      Defendant Yehezkel Elia respectfully submits this memorandum of law in support of his motion to suppress evidence illegally seized from two stores and an office he leases at the Cross County Shopping Center in Yonkers.  The motion is based on violations of the Fourth Amendment.

      Preliminarily, the locations to be searched were not described correctly.

      More important, however, the warrant was based on an affidavit from an I.R.S. special agent, Herbert Eis, whose essential source of information was a confidential informant whose reliability was not previously established, not corroborated by even the most cursory examination, and, beyond that, was demonstrably inadequate.  The confidential informant provided information to Agent Eis that was contrary to the documentary evidence he said he had reviewed.

      The affidavit that Eis signed in support of the application for the warrants omitted essential facts that were inconsistent with the informant's communications to Eis and that were inconsistent with conclusions Eis intended for the magistrate to draw.  The omitted

facts reasonably should have been included; their omission changed the meaning of the government's evidence in a most deceptive and substantial manner and distorted the facts available to the magistrate in order to make an informed and thoughtful determination as to whether probable cause existed to issue the warrants.

Finally, since the confidential informant quit the employment of defendant's companies in February, 2003, it had to have been obvious to Eis that she was not present at the office or the stores on later dates when she claims to have made observations. The confidential informant had no right to be at the premises on those subsequent dates and, more important, no means of access to the office. Eis blindly accepted her statements regarding her observations shortly before the warrant affidavit was prepared and signed.

A cursory review of the warrant affidavit and the facts available to Eis indicates clearly that Eis had to have known that the information from the confidential informant was not reliable. Yet Eis's affidavit was drafted in a manner to conceal essential facts from the issuing magistrate. It appears that this was done deliberately in order to mislead the magistrate; but even if it was not deliberate, but merely reckless or even negligent, that is sufficient to warrant suppression of the seized evidence under Supreme Court decisions, such as *Delaware* v. *Franks* and *United States* v. *Leon*.

## II. Statement of the Facts

The facts recited herein are derived from the Affidavit of Yehezkel Elia, the

Affidavit of Jay Genuth, the three search warrants, the Affidavit of I.R.S. Special Agent

Herbert Eis in support of the application for the search warrants, and a page from the

discovery material.  1/

### A. The Locations of the Premises Searched and the Descriptions of the Locations

Yehezkel Elia owned Sports Stop and Sneaker Mania, as well as other stores, at

the Cross County Shopping Center.  He also maintains an office for Sneaker Mania, Inc.,

in an office building at the shopping center.

The correct names and addresses of the three premises searched are as follows:

Premises No. 1:
Sneaker Mania, Inc.
Suite 802
6 Xavier Drive
Cross County Shopping Center
Yonkers, New York

Premises No. 2:
Sneaker Mania
1F Xavier Drive
 Cross County Shopping Center
Yonkers, New York
search warrant was for 1BB Xavier Drive.

Premises No. 3:
Sports Stop Store
17 Xavier Drive
Cross County Shopping Center
Yonkers, New York

---

1/  The search warrants, the Affidavit of Special Agent Eis, and the page from
the discovery are submitted without an authenticating Affidavit as these items were all
provided to the defense by the government, and their authenticity is undisputed.

Special Agent Eis described the premises as follows in his Affidavit:

Premises No. 1:
Sneaker Mania, Inc.
Suite 803
6 Xavier Drive
Cross County Shopping Center
Yonkers, New York

Premises No. 2:
Sneaker Mania
1BB Xavier Drive
 Cross County Shopping Center
Yonkers, New York

Premises No. 3:
Sports Stop Store
17 Xavier Drive
Cross County Shopping Center
Yonkers, New York

The Search Warrants authorized searches at the following described locations:

Premises No. 1:
Sneakerama D/B/A Sneaker Mania, Inc.
Suite 803
6 Xavier Drive
Cross County Shopping Center
Yonkers, New York

Premises No. 2:
Sneaker Mania
1BB Xavier Drive
Cross County Shopping Center
Yonkers, New York

Premises No. 3:
Sports Stop
17 Xavier Drive
Cross County Shopping Center
Yonkers, New York

Affidavit of Herbert Eis, Feb. 20, 2004 (hereafter "Eis Affidavit") at paras 30, 34; Search

Warrants; Affidavit of Yehezkel Elia, Jan. 9, 2008 ("Elia Affidavit") at paras. 5, 6.

### B. The Informant's Ability to Make Recent Observations

The confidential informant was Harjrij Zherka, known as "Lily." Lily worked in the office. Elia Affidavit at paras. 2, 3. The Eis Affidavit in support of the search warrant applications was dated February 20, 2004. Lily resigned as bookkeeper in February, 2003. Eis Affidavit at para. 6; Elia Affidavit at para. 2. Lily approached the government in March, 2003. Eis Affidavit at para. 6.

When Lily resigned, Elia changed the locks and did not give her the new keys. She had no right to be in the office after February, 2003, and she had no ability to gain entry after February, 2003. She also had no right to be in the stores. Elia Affidavit at para. 4. Nevertheless, Eis says that she claimed she was at the office and the stores, as well as the basement storage areas of the stores, on an unspecified number of occasions after February, 2003.

Eis claimed that the C.I. (Lily) was last at Premises No. 1, the office, as late as December, 2003. Eis Affidavit at para. 34. Eis claimed that Lily was at Premises No. 2 as late as January 23, 2004, and that she was in the basement storage area in March, 2003. Eis Affidavit at para. 36. Eis claimed that Lily was at Premises No. 3, including the basement storage area, as late as November 21, 2003. Eis Affidavit at para. 38.

Eis should not have, and probably did not, believe that the confidential informant could be in locations she had no right to be present at and no means to gain access to on so many occasions and times convenient for the government. She had no business or valid reason to go to the stores, particularly the basement storage areas, and she had no business and no means to gain entry to the office. He did not inform the magistrate (at least not in the affidavit) of the unfriendly circumstances of Lily's resignation.

**C. The Misstatements and Omissions of Material Facts from Eis's Affidavit**

Eis was aware, but did not inform the magistrate, of facts that negate probable cause. Eis or another individual carefully drafted the Affidavit to omit material facts that ought to have been disclosed to the magistrate in fairness. Beyond that, the Affidavit was drafted artfully to juxtapose sentences in a way that created a deceptive impression. The result is that material facts that could have caused a magistrate to conclude there is no probable cause were withheld. But beyond that, conclusions were suggested that were contradicted by the concealed material facts.

**1.  The Confidential Informant's False and Fraudulent Purchase Records**

The C.I. ("Lily") informed Eis that Elia took cash from the stores. Elia does not dispute this fact. However, she also told Eis that Elia used the cash to purchase postal money orders and used the money orders to purchase merchandise for his stores. The majority of the purchases was made by money order. Eis Affidavit at paras. 13, 19. Elia does not dispute that either. Since Elia used cash to purchase inventory for his stores, that cash could not have been "diverted."

What is at issue in the determination of probable cause is the existence of additional cash that was not used to purchase inventory and that was "diverted." However, even that cash is not at issue if Elia reported it as income on his tax returns. There is no indication in the search warrant, except the C.I.'s uncorroborated word, that cash was diverted. Eis Affidavit at para. 13. Eis had to know that the C.I. had no means to know whether any cash not used to pay for store purchases was diverted, i.e., not reported on the tax returns as income. That is the crucial fact that requires corroboration. However, there is no indication in the search warrant affidavit that the C.I. had previously

demonstrated her reliability or that her reliability was corroborated. As shown below, a cursory examination reveals that the C.I.'s reliability was poor and that she, in fact, lied to Eis. Eis should have known this if he had checked her reliability as required.

Eis says that the C.I. produced purchase records. (Affidavit at para. 19.) He suggests that cash that was taken in excess of the amounts indicated in the C.I.'s purchase records equals cash that was "diverted." However, it was not diverted if it was reported as income and if taxes were paid on it. Eis omits this possibility. Eis omits the fact that Elia reported substantial wage income on his tax returns in excess of the checks drawn to him for wages. He admitted that he checked the tax returns (Eis Affidavit at para. 17.) He also checked the bank records. (Eis Affidavit at para. 12.) Therefore, he had to have known that a substantial portion of Elia's wage income was paid in the form of cash.

More important, the C.I.'s purchase records are false and that falsity could have been established quite easily if Eis had attempted to corroborate the C.I.'s reliability on the issues that mattered. The C.I.'s phony purchase records omit numerous purchases, By doing that, the C.I. created an appearance that Elia pocketed and diverted the cash that was not used to purchase money orders that were used to pay for inventory.

The false nature of Lily's purchase records is easy to prove. The vendors from whom Elia's stores purchased merchandise maintained their own sales records. The defense obtained and reviewed sales records from Elia's stores' principal vendor. These sales records prove clearly that Lily did not include all purchases in the phony books she provided to Eis. Eis could have established Lily's reliability or lack of reliability quite easily. The defense was able to obtain sales records from the principal vendor. Eis could have done the same. The sales records establish that a substantial portion of purchases

was not recorded in the C.I.'s books. Genuth Affidavit at para. 7. Had Eis checked the

reliability of his previously unknown informant by this simple method, he would have

ascertained not only that she lacked ordinary reliability, but that she lied completely. 1/

>   **2. Evidence Eis Possessed, but Concealed from the Magistrate, to the Effect that Cash Elia Took Was the Salary He Reported on His Tax Returns and on Which He Paid Taxes**

Eis stated that he reviewed Elia's personal tax returns. Eis Affidavit at para. 3(b,

17). Therefore, he had to know that Elia reported substantial sums of income in the form

of wages. Eis also possessed bank records for Elia's corporations. (Eis Affidavit at

paras. 11, 12.) Those records establish that Elia was not paid all of his salary in the form

of checks. Elia reported substantial salary from his corporations, yet did not receive

checks to account for all this salary income. Genuth Affidavit at para. 9. Eis had to

conclude that part of the income Elia reported had to have been in the form of cash. Eis

knew or should have known this. Such knowledge (or constructive knowledge) tends to

negate probable cause to believe that Elia "diverted" cash. Eis deceptively omitted these

facts from his Affidavit.

---

1/ The defense subsequently discovered that Lily not only kept an understated record of purchases, but she also apparently removed and destroyed the invoices that are not recorded in her purchase records so that they would not be present at the time of the search and seizure. The seized purchase invoices that the government disclosed to the defense do not contain invoices for purchases that are not included in Lily's records, but that are included in the vendors' sales records. In fairness, Eis could not have known this until after the search.

### 3. The Informant's Phony Sales Records for Pizza Mania

Eis failed to inform the magistrate of other fraudulent records maintained by the confidential informant that falsely increased sales, yet he relied on these records in his Affidavit. Eis informed the magistrate of a discrepancy between the C.I.'s sales books for Pizza Mania (one of Elia's stores at the shopping center) and the sales Pizza Mania reported on its corporate tax returns. Eis had to have known from his review of the C.I.'s records for Pizza Mania that her sales records were fabricated. They included entries for days the store was closed, including Thanksgiving. Elia Affidavit at para. 7. In addition, they include an entry for a non-existent date, September 31, 2001. Realizing her mistake, the C.I. crossed out the 31st daily entry for September, and made the same entry for October. (See attached page provided in discovery.)

Eis claimed he relied on this sales book. Eis Affidavit at para. 17. That being so, he should have been aware of these indications of a frame-up by Lily and of her consequent lack of reliability. Yet he failed to inform the magistrate of these anomalies that appear upon a casual observation of the alleged sales book for Pizza Mania.

### 4. Deceptive Statements Regarding Alleged Concealment of Sales Receipts

In affidavits in support of search warrant applications, agents routinely rely on their experience in investigating federal crimes. Eis properly cited his experience to support his conclusion that "paying for legitimate business expenses through money orders is not an ordinary business practice where, as here, the business has bank accounts ...." Eis Affidavit at para. 11. (This would not be true if there are legitimate business reasons, such as poor credit, for using money orders.) However, the next sentence does not flow logically from the foregoing and therefore is deceptive: Eis equates concealing

"purchases," which is not to a taxpayer's advantage, with concealing "business practices." And he equates concealing "business practices" with concealing "receipts." (Eis Affidavit at para. 11.)  These leaps are deceptive and improper reliance on an agent's "experience." A taxpayer could have no illegitimate income tax motive to conceal his purchases, as purchases decrease net income, and, therefore, decrease income tax liability. Concealment of purchases is not relevant to concealment of receipts and Eis's intimation that it is is deceptive.

### 5. Deceptive Statements Regarding Alleged Diversions by Elia of Cash to an Account He Owned in Israel

Eis stated that Elia had power of attorney over an account at Charles Schwab that was in the name of his brother, an Israeli citizen, and that Elia wired out of the account more than $100,000 "to bank accounts in Israel, one of which was an account on which Yehezkel Elia was the named beneficiary." Eis Affidavit at para. 14.   In the words that immediately follow, Eis stated, "In another example of how Elia was using the cash proceeds from his stores, * * *." Eis Affidavit at para. 15.

This deceptive positioning of facts with fictions and with omissions of material facts creates a shockingly deceptive impression. Eis neglected to state a material fact he had to have known, since, as he admitted, he possessed the records of the Charles Schwab account. Those records reveal that no cash ever was deposited to the Schwab account. Genuth Affidavit at paras. 4-5.

Mr. Eis never stated that Mr. Elia did deposit cash from the stores into the Schwab account. That would have been an explicit false statement. However, he did state, immediately after discussing the Schwab account, "In another example of how Elia

was using the cash proceeds from his stores, * * *." (Eis Affidavit at para. 15.) What followed was not <u>another</u> example of how Elia used cash proceeds from the stores. It was not even a first example. The "example" related in paragraph 14 is not an example of how Mr. Elia used cash proceeds from his stores because Mr. Elia did not deposit cash into the Schwab account. Genuth Affidavit at para. 9. The "example" related in paragraph 15 also is not an example because U.S. Customs found no wrongdoing by Elia and returned to him cash it had seized from him. Elia Affidavit at para. 8; Genuth Affidavit at para. 6.

A person reading paragraph 14 of Eis's affidavit could conclude that Elia wired more than $100,000 of cash proceeds from his stores to his bank account in Israel. However, the Eis affidavit not only fails to state that the deposits to the Schwab account were not cash receipts, but it also fails to establish the number of Israeli accounts into which the wire transfers were deposited. It states only that Mr. Elia had a beneficial interest in <u>one</u> of the accounts to which the money was wired. There is no indication of how much of the $100,000 was wired into that account. Genuth Affidavit at para. 5. And, as above, there is no indication that the wire transfer was the proceeds of a Schwab account funded with cash deposits. Genuth Affidavit at para. 5.

It appears that not only did the government conceal from the magistrate that no cash was deposited into the Schwab account, but that the government's choice of words was an attempt to mislead the magistrate into believing that the Schwab account was an "example of how Elia was using the cash proceeds from his stores."

### D.  There Was No Meaningful Corroboration of the C.I.'s Statements

The only "corroboration" concerns unimportant statements made by the C.I.

The C.I. said that not all cash was deposited.  Agent Eis "corroborated" this information

by examining a bank statement covering a one-month period and establishing that credit

card sales were deposited principally, as opposed to cash.  Eis Affidavit at para. 11.

Obviously that investigative work is not corroboration where the C.I. and the government

admit that cash was used to purchase money orders that were used to pay for inventory

for the stores.  See also Eis Affidavit at para. 20, where Eis "corroborated" that Elia used

cash to purchase money orders.  Again, since these money orders were used to purchase

inventory, Eis again "corroborated" a fact that was unimportant in the circumstances and

then added to it his conclusion that this establishes that Elia is attempting to "conceal the

extent of his business activities."  There is no other indication of corroboration" in Eis's

affidavit.

## ARGUMENT

**BECAUSE THE EIS AFFIDAVIT CONTAINED FALSE STATEMENTS KNOWINGLY AND INTENTIONALLY, OR WITH RECKLESS DISREGARD FOR THE TRUTH, THE EVIDENCE SEIZED FROM THE THREE PREMISES PURSUANT TO THE THREE SEARCH WARRANTS MUST BE SUPPRESSED; THE EVIDENCE ALSO MUST BE SUPPRESSED DUE TO WRONG LOCATIONS SEARCHED AND STALE INFORMATION**

This is a classic case for suppression. The C.I. had no prior record of reliability, thereby requiring that the government investigate her statements to obtain corroboration in order to establish a "totality of circumstances" amounting to reliability. *Illinois* v. *Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). Rather than do so, the government turned a deaf ear to certain misstatements by the C.I., consciously disregarded its duty to verify her reliability, omitted material facts that could have led the magistrate to conclude that probable cause does not exist, and used words in a manner that appears to have been calculated to deceive the magistrate into believing that cash was deposited to the Schwab account, and, therefore, that such cash was "diverted" when it was deposited to an account in another person's name, and laundered when it was wired to Israel.

In *Delaware* v. *Franks*, 438 U.S. 154, 98 S. Ct. 2674 (1978), the United States Supreme Court ruled that an evidentiary hearing to exclude evidence will be granted where the defendant alleges with specificity that the evidence has been obtained as a result of a search warrant obtained on the basis of the affiant's "deliberate falsehood or reckless disregard for the truth." 438 U.S. at 171, 98 S. Ct. at 2684. The search warrant will be voided and evidence will be excluded if, after the hearing, a defendant establishes by a preponderance of the evidence that the false statement was included in the affidavit by the affiant knowingly and intentionally, or with reckless disregard for the truth and the

false statement was necessary to the finding of probable cause. 438 U.S. at 155-156, 98

S. Ct. at 2676. Elia has demonstrated that false statements have been made with at least

reckless disregard for the truth, or deliberately, when Eis began paragraph 15 by saying,

"In another example of how Elia was using the cash proceeds from his stores, ***",

In addition, we respectfully submit that the government's several omissions of material

facts that go to the heart of probable cause (or not) are equivalent to false statements.

In *United States* v. *Leon*, 468 U.S. 897, 104 S. Ct. 4405 (1984), the Supreme

Court ruled that suppression is warranted where the officers have no reasonable ground

for believing that the warrant was properly issued. There, a confidential informant of no

proven reliability informed the police that he had observed defendant sell drugs and that

the defendant carries only small amounts of drugs on the streets and keeps the rest at

another location. The officers did a surveillance of defendant's residence and observed

known drug dealers coming and going. 468 U.S. at 901, 104 S. Ct. at 3409. The trial

court found that probable cause was lacking as to the existence of drugs at the residence.

The question was whether the good faith belief of the officer in the validity of the search

warrant was sufficient to avoid suppression of the evidence. 468 U.S. at 905, 104 S. Ct.

at 3411. The Court held that it is, and reversed the lower courts.

The Court stated that the deterrent purpose of the exclusionary rule necessarily

assumes that the police have engaged in willful, or at the very least negligent, conduct

which has deprived the defendant of some right. 468 U.S. at 919, 104 S. Ct. at 3418.

Suppression will remain a remedy only if the magistrate was "misled" by information in

an affidavit that the affiant knew was false or would have known was false except for his

reckless disregard for the truth. 468 U.S. at 923, 104 S. Ct. at 3421; see also *United*

*States* v. *Coreas*, 419 F.3d 151, 155 (2d Cir. 2005) (affirming and remanding where parts of affidavit that were not knowingly or recklessly false supported search warrant).

Under the current state of the Exclusionary Rule, the affidavit of Agent Eis contains sufficient reason to conclude that the C.I. had no established reliability, that Eis failed to corroborate her allegations except as to immaterial matters, that Eis could easily have found evidence to establish her lack of reliability, and that the C.I. presented to Eis alleged business records that were palpably false. That alone would be sufficient to justify suppression under the applicable Fourth Amendment case law.  However, Eis went on to mislead the magistrate deliberately or at least recklessly in several ways, most graphically by his introductory non-sequitur in paragraph 15.

Also justifying suppression, although a lesser threat to freedom in the circumstances present here, is the fact that the affidavit and two search warrants contained errors in describing the location to be searched, thereby giving the executing agents free reign to search wherever they pleased.  *See*, *United States* v. *Kaye*, 432 F.2d 647 (D.C. Circuit 1970).

In addition, since it appears that the C.I. falsely claimed she was present at premises she had no right to be present at and no means to gain access to, her information had to have been based on observations she made in February, 2003, when she resigned. Since that was one year before the search warrant affidavit, the information had to have been stale, and, therefore, not capable of giving rise to probably cause.

## CONCLUSION

The evidence ought to be suppressed in this matter as the affidavit in support of the search warrants was made with deliberate falsehoods or with reckless disregard for the truth.

Respectfully submitted,

Jared J. Scharf
1025 Westchester Avenue
White Plains, New York 10604
(914) 682-9777

Attorney for Defendant
    Yehezkel Elia

Dated:  White Plains, New York
         January 10, 2008