# MEMO ENDORSED



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 23, 2008

**BY HAND**
Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States Courthouse
New York, NY 10007

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____
```

    Re:   **United States v. Elia and Elyaho,**
           07 Cr. 543 (KMK)

Dear Judge Karas:

    We write to respond to the repeated references to the Government's attempt to thwart the defense in this case. Although we do not ordinarily like to bring these kinds of disputes before the Court, because there have been so many repeated misrepresentations about the history of this case, it appears that a response is warranted in order to set the record straight and to avert a potential appellate issue. We also write to preclude the defendant from calling former Special Agent Herbert Eis as a witness in the defense case and we include a proposed supplemental charge regarding the lawfulness of the search warrant.

### History of the Proceedings

    Mr. Scharf has repeatedly stated that this Office has withheld relevant records from his client for years. By way of background, Mr. Scharf is the third attorney to represent Mr. Elia in the four years since Mr. Elia learned about the investigation. Prior to my involvement, Mr. Elia's records were seized from his business premises pursuant to search warrants. Prior to Mr. Scharf's involvement, those records were made available to Mr. Elia and his representatives on numerous occasions. Shortly after Mr. Scharf's appearance in this case, we began discussions regarding a disposition.

By letters dated April 20 and May 19, 2005, this Office memorialized its offer to send out all of the search warrant materials for photocopying. In addition, in response to specific requests for records necessary to prepare tax returns or for other purposes, this Office produced some records and made other records available. Mr. Elia declined our offer to copy all search warrant materials in 2005, because he did not want to pay for copies of his own records. Although the government was willing to send the records out for copying, the budget office of the United States Attorney was not willing to bear the expense of copying so many records. Thereafter, Mr. Scharf asked us to gather specific invoices, which literally were scattered throughout the search records. In response to this request, Government agents isolated and produced a large portion of the invoices seized in the search to the defense, however, unfortunately, their production was not totally complete. The records seized are voluminous and fill an entire room from floor to ceiling, and as agents continued their review they found that there were invoices throughout the boxes. Therefore, their initial production of invoices – which was provided as an accommodation in order to facilitate discussions regarding a plea – was not complete.

Contrary to the inference in Mr. Scharf's various papers, this Office *never* agreed to produce, pre-Indictment, any of the records that it obtained pursuant to grand jury subpoenas. Although Mr. Scharf repeatedly requested those records and the Eis search warrant affidavit, it has been our position from the outset that such records would be produced *only* if the case were indicted. Further, although Mr. Scharf has complained loudly and regularly about our failure to provide the subpoenaed records prior to Indictment, the reality is that the vendor records always have been more readily available to Elia. Indeed, Elia has an ongoing relationship with the vendors and easily can request complete vendor history statements, whereas the Government must subpoena such records.

In the year before the case was presented to a grand jury, this Office, Mr. Elia, Mr. Scharf, and Mr. Guneuth had numerous discussions regarding a disposition. It is not our practice to make complete discovery pre-Indictment in such a document intensive case if it appears that a plea is likely, for obvious reasons pertaining to resource management and cost. Similarly, I understood from Mr. Scharf that Mr. Elia did not want to pay for complete discovery unless we were unable to work out a disposition. Over the two years before Indictment, we provided Mr. Elia's representatives with our financial analysis of his tax exposure and we also provided back-up charts showing how those figures were determined. These charts contained our tax analysis of the search materials as well as materials that we received from other sources. Further, each time that the accountants brought forth potential additional expenses to our attention, we credited Elia for those expenses -- whether or not we could find any evidence of Elia ever having sustaining

such expenses or paying for those expenses. After literally months of discussions, in 2006, we arrived at a plea agreement that represented a substantial compromise. Thereafter, we sought the approval of the Department of Justice to dispose of the case according to terms that we understood were acceptable to Mr. Elia.

At five o'clock the evening before Mr. Elia's scheduled plea, this Office learned that Mr. Elia would not be going forward with the plea, unless we would agree to terms that were not authorized by the Department of Justice. Accordingly, from April of 2006 until Indictment in June of 2007, government agents worked on pulling the case together in order to present it to a grand jury. Prior to seeking an Indictment, we did not provide full discovery to Elia because we were hopeful that we would reach a complete disposition in this case, without either side having to bear the time or the expense of full-blown discovery in such a document intensive case. Post-Indictment, Elia has had more than enough time to digest the documents produced. In fact, he has had most of the records for well over a year. Although there was some delay in the production of records, that delay is largely attributable to the fact that Mr. Elia's records sat at the photocopier for periods of weeks and months because Elia would not pay for them.

In March of 2008, we provided the defense with a preliminary exhibit list, outlining the documents (mostly invoices and checks) that support the financial figures in our case. On March 28, 2008, the parties appeared for a conference and Judge McMahon notified us that the case was reassigned to Your Honor. That same day, Your Honor directed the Government to produce copies of all of its thousands of trial exhibits by May 2, 2008, four weeks later. On May 2, 2008, pursuant to an agreement with counsel, the Government produced the trial exhibits on computer discs in "tiff" format. Because the process of marking and photocopying these records was so cumbersome, and because prior to the March 28, 2008 conference, we did not anticipate going to trial before the fall, we were unable to interview all of the potential trial witnesses prior to making the May 2 production. As a result, our initial exhibit production did not include some exhibits that were later marked. Mr. Scharf's repeated assertion that we held back the majority of our proof, however, is completely false and grossly mischaracterizes our efforts.

The Government's case is primarily based upon the sales records, invoices and the records of payments of expenses by the Elia companies– the records that were marked and produced on May 2, 2008, the records that have appeared in our agent's schedules supporting our tax figures and the same records that were made available in discovery long before that date. As was set forth in our recent series of letters to the Court, after the May 2 production, we marked very few exhibits that were not produced in discovery, and those additional records were produced as soon as we received them. The Federal Rules of Criminal Procedure permit the parties – including the government – to issue trial

subpoenas that technically are returnable in court during the trial. In the process of preparing a witness to testify and/or in response to arguments raised by counsel at hearings and in correspondence, we occasionally saw a need to retrieve additional records. This practice is neither a bad faith practice nor underhanded, as generally witnesses are not prepared for trial testimony until the parties know that there will, in fact, be a trial. Although Mr. Scharf has complained that we are burying him with exhibits, as records have trickled in, we have immediately produced them to him in accordance with our continuing discovery obligations under Rule 16. Instead of merely notifying counsel that new documents were available for inspection, we copied the documents in their entirety in order to avoid a complaint that we were unfairly causing the defense to spend time reviewing additional records in our office. Many of the additional records were not marked as exhibits and were produced only to fulfill our Rule 16 obligations. By our count, other than rebuttal exhibits which we were under no obligation to produce, the Government produced less than 20 exhibits after May 2, 2008 that came from third-parties and which were not previously provided in discovery. In a case with over 3,000 exhibits, our efforts cannot be fairly characterized as withholding evidence.

Although Mr. Scharf has complained about the production of the Government's Exhibits on disc, we explicitly sought and obtained his consent to produce the records in "tiff" format before sending them out for photocopying. Although he now says that he would like them in excel format, I have been advised that the records cannot be scanned into excel format. In addition, although Mr. Scharf repeatedly complains about how slowly his computer retrieves the exhibits, the retrieval process (which takes time for the Government as well) is unquestionably quicker than finding the pertinent records in a sea of 30-50 boxes.

To make a long story short, we take exception to Mr. Scharf's characterization of the history of the proceedings and the assertion that the Government has attempted to thwart his ability to mount a defense. Each and every time that Mr. Scharf has complained about our conduct, when confronted, he cannot articulate specific examples to support his blanket allegations. The fact is that we have afforded Mr. Elia with more pre-Indictment accommodations than we usually provide, substantially more than are required, and in the post-Indictment proceedings the largest delay in production of discovery materials was due to Elia's refusal to pay the photocopier. Either way, the defendants have had copies of all relevant materials for a year. Similarly, in preparing for trial we have expeditiously produced third-party records as soon as we have received them and in all instances long before related witness testimony and, in accordance with Your Honor's suggestion, we have identified the records that our witnesses will address in advance of their testimony.

**Herbert Eis**

In addition, we wish to address the anticipated testimony of former Special Agent Herbert Eis. Pursuant to Your Honor's direction, Mr. Eis will be in the courthouse on Tuesday and Wednesday, available to testify, as it is likely that the Government will rest on Tuesday before the end of the day. For the reasons set forth below, the Government respectfully submits that the defendant should be precluded from calling Eis as a witness in this case.

We understand from Mr. Scharf that he intends to call Eis to establish that Zherka told Eis that she had been in the basements of both SneakerMania and Sports Stop, after she quit working at SneakerMania. Neither Eis' notes of his conversations with Zherka nor the search warrant affidavit are inconsistent with Zherka's testimony. Ms Zherka testified that she did not have a specific recollection of her telephone conversations with Eis or of the last time that she went to the basement of either location. Mr. Scharf already has done what the Federal Rules of Evidence allow him to do. He should not be permitted to call Eis and to quiz Eis about his memos pertaining to his telephone conversations with Zherka, or about the search warrant affidavit, as he has already questioned Zherka about these conversations and also because Eis' statements are not inconsistent with Zherka's testimony and will only confuse the jury. Scharf is free to make any argument that he wants to the jury about why Ms. Zherka does not remember what she said to Eis and does not need Eis's testimony to advance those arguments.

In *United States v DiPaolo*, 804 F.2d 225, 230 (2d Cir. 1986) a defendant attempted to call witness to attack the credibility of a government witness, just as Mr. Scharf seeks to do here. The Second Circuit upheld the trial court's preclusion of such testimony, and found the preclusion supported by Fed. R. Evid. 608(b)'s specific prohibition of "proof by extrinsic evidence of specific instances of the conduct of a witness for the purpose of attacking or supporting credibility...." *Id.* at 230. The court stated that witness credibility may be attacked "only on cross-examination in the discretion of the court." and that the preclusion of such witness testimony was proper. Here, absent some articulated relevant purpose, Elia should not be permitted to conduct a fishing expedition and to question Eis about his search warrant affidavit.

**Supplemental Jury Request**

Enclosed is a proposed supplemental jury instruction pertaining to the lawful search of the defendant's offices.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

by: _/s/ Cynthia K. Dunne_
Cynthia K. Dunne
Seetha Ramachandran
Assistant United States Attorneys
(914) 993-1913/1907

cc: Jared Scharf, Esq. (by email and fax, on June 23)
    Joseph Vita, Esq. (by email and fax, on June 23)

*The Clerk is respectfully requested to docket this letter.*

*So Ordered.*

*[signature]*
*6/24/08*

SUPPLEMENTAL REQUEST NO. 1

Use Of Evidence Obtained Pursuant To Search

You have heard testimony about certain evidence that was seized in searches of the defendants' stores and offices in 2004. Evidence obtained from those searches was properly admitted in this case, and may be considered by you. Whether you approve or disapprove of how this evidence was obtained should not enter into your deliberations because I now instruct you that the Government's use of this evidence is entirely lawful.

You must, therefore, regardless of your personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proved a defendant's guilt beyond a reasonable doubt.

Adapted from the charges of Judge Pierre N. Leval in United States v. Ogando, 90 Cr. 469 (PNL) (S.D.N.Y. 1991), aff'd, 968 F.2d 146 (2d Cir. 1992) and in United States v. Mucciante, 91 Cr. 403 (PNL) (S.D.N.Y. 1992).